UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

SOUTHERN DIVISION

| | |
|---|---|
| DANY SAAR and ITZHARA SAAR,<br><br>Plaintiffs,<br><br>vs.<br><br>THE KINGDOM TRUST COMPANY, a South Dakota Corporation,<br><br>Defendant, | 4:19-CV-04158-KES<br><br><br>ORDER GRANTING MOTION TO COMPEL |

    Defendant, The Kingdom Trust Company, moves to compel plaintiffs, Dany Saar and Itzhara Saar, to provide full and complete responses to portions of its first set of interrogatories and requests for production. Docket 20. The Saars oppose the motion, claiming the requested material is privileged under the common interest exception to the general rule that disclosure to a third party waives attorney-client privilege.[1] Docket 32. For the following reasons, the court grants Kingdom Trust's motion to compel.

---

[1] The Saars and now-terminated plaintiffs Drake Whitehurst, Roy Tromboli, and Virginia Darden initially opposed the motion because Kingdom Trust allegedly failed to meet and confer prior to moving to compel and because the motion to compel included plaintiffs who had already voluntarily moved to dismiss the action. Docket 26. The court denied the motion to compel as to Whitehurst, Tromboli, and Darden. Docket 31. The court held a hearing during which the parties raised the common interest privilege exception. Docket 30. The court ordered the parties to provide additional briefings on the privilege. Docket 31; *see* Dockets 32, 34, 41.

## BACKGROUND

### A. Introduction

Kingdom Trust is a trust custodian for individual retirement accounts (IRAs). Docket 1 ¶ 16. Bitcoin IRA offers an online platform that enables retirement account holders to self-direct the funds in their accounts and invest those funds in cryptocurrency assets. *Id.* ¶ 14. Digital IRA is an account service provider that facilitates purchase, sale, and delivery of cryptocurrency assets held in IRAs and 401(k) accounts. *Id.* ¶ 13. IRA holders who wish to invest in cryptocurrency and self-direct their investments online must use a trust custodian—like Kingdom Trust—to hold those assets, an account service provider—like Digital IRA—to facilitate asset purchases and sales, and a digital platform—like Bitcoin IRA—to direct those sales. *See id.*

### B. Digital IRA's Lawsuit Against Kingdom Trust

Until June 12, 2019, Bitcoin IRA and Kingdom Trust agreed that Bitcoin IRA would direct its customers to use Kingdom Trust as their trust custodian and Kingdom Trust would agree to direct its customers to use Bitcoin IRA as their account designated representative (ADR). *Id.* ¶ 16. Under that referral agreement, Kingdom Trust and Bitcoin IRA developed a relationship in which they shared many customers who used Kingdom Trust as their trust custodian and Bitcoin IRA as their ADR. *See* Complaint, *DigitalIRA.com LLC v. Kingdom Trust Co.*, No. 4:19-CV-04147-KES (D.S.D. Aug. 26, 2019), Docket 1 ¶ 26. In June 2019, some Kingdom Trust customers who used Bitcoin IRA as their ADR requested transfer of their assets to BitGo Trust, a trust custodian for whom

2

Digital IRA is the sole ADR. *Id.* ¶ 27. On August 26, 2019, Digital IRA filed suit against Kingdom Trust in the District of South Dakota. *See id.* at 23.

Digital IRA alleges in the complaint that Kingdom Trust "delayed and obstructed" customers' requests to transfer the assets. *Id.* ¶ 32. Digital IRA filed suit, alleging seven causes of action: (1) tortious interference with the advantageous business relationship between Digital IRA and its current and prospective clients; (2) unfair competition; (3) deceptive acts and practices under SDCL § 37-24-6; (4) conversion; (5) breach of the referral contract between Bitcoin IRA and Kingdom Trust; (6) defamation; (7) unjust enrichment; and (8) declaratory judgment. *Id.* ¶¶ 56-104. Digital IRA requested a preliminary injunction and temporary restraining order ordering Kingdom Trust to transfer customers' assets from Kingdom Trust to BitGo Trust. Motion for Preliminary Injunction and Temporary Restraining Order, *DigtialIRA.com*, No. 4:19-CV-04147-KES, Docket 3.[2]

During the hearing on Digital IRA's motion for preliminary injunction and temporary restraining order, Chris Kline, Digital IRA's co-founder and COO, testified that Digital IRA solicited Kingdom Trust's customers to be plaintiffs in a "mass action" against Kingdom Trust. Transcript of Hearing on

---

[2] During the motion hearing, the parties clarified the relationship between BitGo Trust and Digital IRA. *See* Transcript of Hearing on Preliminary Injunction and Temporary Restraining Order, *DigitalIRA.com*, No. 4:CV-04147-KES, Docket 86 at 17, 52-53. BitGo Trust is a trust custodian for which DigitalIRA.com was the trust administrator. *Id.* at 52-53. DigitalIRA.com was created solely to be the third-party administrator for BitGo Trust. *Id.* at 17. Chris Kline is the COO of both entities. *Id.*

Preliminary Injunction and Temporary Restraining Order, *DigitalIRA.com*, No. 4:CV-04147-KES, Docket 86 at 16, 121. Digital IRA sent its customers emails that urged them to click on a link connecting them to the firm representing the Saars and other Kingdom Trust customers in this action. *Id.*

**C.    The Saars' Lawsuit**

The Saars each opened a traditional IRA account with Kingdom Trust on November 28, 2017. Docket 1 ¶¶ 18-19. They both named Bitcoin IRA as their ADR in their applications to open the IRA accounts. *Id.* On July 5, 2019, the Saars requested that Kingdom Trust transfer their assets to BitGo Trust. *Id.* ¶¶ 31, 37-38.

According to the Saars, Kingdom Trust has "engaged in numerous unfair and deceptive bad faith business practices" to avoid transferring their and other customers' accounts to BitGo Trust. *Id.* ¶ 41. The Saars also allege that Kingdom Trust removed Bitcoin IRA and Digital IRA's access to Kingdom Trust accounts for which Bitcoin IRA was the ADR. *Id.* ¶ 55. While Kingdom Trust alleges that it was performing due diligence before transferring accounts to ensure customers actually wanted their account data transferred, the Saars allege that this due diligence is an overbroad stall tactic. *Id.* ¶ 57. The Saars filed suit in the District of South Dakota, alleging ten counts: (1) breach of contract claiming that Kingdom Trust breached the traditional IRA custodial agreement (Custodial Agreement) and seeking specific performance; (2) breach of contract claiming that Kingdom Trust breached the Custodial Agreement and seeking damages; (3) breach of the implied covenant of good faith and fair

4

dealing; (4) conversion of property by a bailee; (5) unfair competition; (6) deceptive acts and practices under SDCL § 37-24-6; (7) unjust enrichment; (8) tortious interference with prospective advantageous business relationship; (9) declaratory judgment; and (10) punitive damages. *Id.* ¶¶ 65-124.

Bitcoin IRA agreed to pay the costs and legal fees associated with the two firms representing the Saars and the former plaintiffs in this action. *See* Affidavit of Ashley R. Brost, Exhibit A, *DigitalIRA.com*, No. 4:19-CV-04147-KES, Docket 92-1 (engagement letter from Christine M. Adams of Cader Adams LLP); Affidavit of Ashley R. Brost, Exhibit B, *DigitalIRA.com*, No. 4:19-CV-04147-KES, Docket 92-2 (engagement letter from Jason R. Sutton of Boyce Law Firm LLP). The Cader Adams LLP letter states:

> Bitcoin IRA understands that, even though Bitcoin IRA has agreed to pay the entirety of plaintiffs' legal fees and costs, Cader Adams LLP represents only plaintiffs and not Bitcoin IRA, and that payment by Bitcoin IRA will not interfere with Cader Adams LLP's independent professional judgment or with the firm's attorney-client relationship with plaintiffs. . . . Bitcoin IRA also understands that Cader Adams LLP will act only in the best interest of plaintiffs, even if plaintiffs' interests are adverse to those of Bitcoin IRA, and that Cader Adams LLP's duty of loyalty and confidentiality under the Rules of Professional Conduct are to the plaintiffs alone and not to Bitcoin IRA.

Affidavit of Ashley R. Brost, Exhibit A, *DigitalIRA.com*, No. 4:19-CV-04147-KES, Docket 92-1 at 1 (engagement letter from Christine M. Adams of Cader Adams LLP). The Boyce Law Firm LLP letter states:

> Bitcoin IRA understands that, even though Bitcoin IRA has agreed to pay the entirety of plaintiffs' legal fees and costs, Boyce Law Firm, LLP represents only plaintiffs and not Bitcoin IRA, and that payment by Bitcoin IRA will not interfere with Boyce Law Firm, LLP's independent professional judgment or with the firm's attorney-client

5

> relationship with plaintiffs. Bitcoin IRA's payment of legal fees and costs in this matter does not create an attorney-client relationship between Boyce Law Firm, LLP and Bitcoin IRA. Bitcoin IRA also understands that Boyce Law Firm, LLP will act only in the best interest of plaintiffs, even if plaintiffs' interests are adverse to those of Bitcoin IRA, and that Boyce Law Firm, LLP's duties of loyalty and confidentiality under the Rules of Professional Conduct are to the plaintiffs alone and not to Bitcoin IRA.

Affidavit of Ashley R. Brost, Exhibit B, *DigitalIRA.com*, No. 4:19-CV-04147-KES, Docket 92-2 at 1 (engagement letter from Jason R. Sutton of Boyce Law Firm LLP).

## LEGAL STANDARD

Federal Rule of Civil Procedure 26 governs the scope of discovery in civil matters, providing:

> Unless otherwise limited by court order, the scope of discovery is as follows: Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable.

Fed. R. Civ. P. 26(b)(1). If a party does not produce requested documents, the party seeking discovery requests may move for an order compelling production. *See* Fed. R. Civ. P. 37(a)(3)(B).

The scope of discovery under Rule 26(b) is extremely broad. *See* 8 Charles A. Wright & Arthur R. Miller, *Federal Practice & Procedure* § 2007 (3d ed. 2015). The reason for the broad scope of discovery is that "[m]utual knowledge of all the relevant facts gathered by both parties is essential to

6

proper litigation. To that end, either party may compel the other to disgorge whatever facts he has in his possession." 8 Wright & Miller § 2007 (quoting *Hickman v. Taylor*, 329 U.S. 495, 507 (1947)). The federal rules distinguish between discoverability and admissibility of evidence. *Christensen v. Quinn*, No. 4:10-CV-04128-KES, 2013 WL 1702040, at *4 (D.S.D. Apr. 18, 2013). Thus, the rules of evidence assume the task of keeping out incompetent, unreliable, or prejudicial evidence at trial. But these considerations are not inherent barriers to discovery. *Id.*

## DISCUSSION

In diversity actions, a federal court must apply state law to determine the existence and scope of attorney-client privilege. Fed. R. Evid. 501; *Baker v. Gen. Motors Corp.*, 209 F.3d 1051, 1053 (8th Cir. 2000). Because this matter arises under diversity jurisdiction, the court must apply South Dakota law to determine if the documents are privileged or whether a privilege has been waived. Under South Dakota law, a client may assert the attorney-client privilege to prevent disclosure of confidential communications made between the client and the client's attorney for the purpose of facilitating the rendition of professional legal services. *See* SDCL § 19-19-502. Generally, a client has the ability "to prevent any other person from disclosing" privileged communications with the client. SDCL § 19-19-502(b). "A client has a privilege to refuse to disclose and to prevent any other person from disclosing confidential communications made for the purpose of facilitating the rendition of professional legal services to the client . . . by him . . . or his lawyer . . . to a

7

lawyer . . . representing another party in a pending action and concerning a matter of common interest therein[.]" SDCL § 19-19-502(b)(3).

"[P]rivileges created by statute are to be strictly construed to avoid suppressing otherwise competent evidence." *State v. Catch the Bear*, 352 N.W.2d 640, 646-47 (S.D. 1984). "The burden of showing entitlement to assert the privilege rests with [the] claimant." *Id.* at 645. The South Dakota Supreme Court has not addressed the situation presented by the facts of this case or interpreted SDCL § 19-19-502(b)(3). Thus, the court will rely on persuasive authorities from other jurisdictions that align with South Dakota's privilege law.

South Dakota's codified common interest privilege protects communications between the client "or his lawyer . . . to a lawyer . . . representing another party in a pending action and concerning a matter of common interest therein[.]" SDCL § 19-19-502(b)(3). The court first looks to the question of whether the Saars and Digital IRA's interests are "common." Some jurisdictions limit the common interest privilege to parties who hold an "identical legal interest with respect to the subject matter of the communication[.]" *Duplan Corp. v. Deering Milliken Inc.*, 397 F. Supp. 1146, 1172 (D.S.C. 1974); *see also Cozzens v. City of Lincoln Park*, 2009 WL 2242396, at *4 (E.D. Mich. July 24, 2009) (finding "too much of a disparity in the nature of the interests in the state court litigation" to protect privilege after disclosure). Courts have found that a shared desire for the same legal outcome is insufficient to constitute a common interest. *See, e.g., Miller U.K. Ltd. v.*

8

*Caterpillar, Inc.*, 17 F. Supp. 3d 711, 731 (N.D. Ill. 2014) (internal quotations omitted) ("A shared rooting interest in the successful outcome of a case . . . is not a [shared] common legal interest.); *In re Pac. Pictures Corp.*, 679 F.3d at 1129 (9th Cir. 2012) (finding that a shared interest in seeing a successful prosecution was not sufficient to protect from disclosure of documents shared between the prosecuting attorney and the victim of the crime).

Some jurisdictions have found, however, that two plaintiffs' causes of action need only arise from common facts, involve common witnesses, and assert similar claims against common defendants to allow parties to assert common interest privilege. *See, e.g.*, *Gelman v. W2 Ltd.*, 2016 WL 8716248, at *4 (E.D. Pa. Feb. 5, 2016); *EEOC v. ChemTech Int'l Corp.*, 1995 WL 608333, at *2 (S.D. Tex. May 17, 1995). The Restatement (Third) of the Law Governing Lawyers adopts this more flexible approach, stating that "the common interest . . . may be either legal, factual, or strategic in character. The interests of [the parties seeking privilege] need not be entirely congruent." Restatement (Third) of the Law Governing Lawyers § 76 cmt. e (2000). But despite these more liberal interpretations, the privilege cannot "serve to abrogate an essential element of the privilege: namely that it is legal advice not business advice which is being sought and which thereby becomes privilege protected." Edna Selan Epstein, *The Attorney-Client Privilege and the Work-Product Doctrine* 383 (6th ed. 2017). The common interest privilege should not "expand . . . to a point where it would engulf any need for confidentiality at all provided that some cognizable common interest is at issue." *Id.* at 365. Thus, despite the

9

Restatement's more relaxed approach, courts have continued to find that there cannot be "too much of a disparity in the nature of the interests" between the parties for common interest privilege to apply. *See Cozzens*, 2009 WL 2242396, at *4.

Here, the Saars' interest is in their IRA accounts being transferred to BitGo Trust because they have an interest in which platform they use to self-direct their IRA assets. *See* Docket 1 ¶¶ 65-72. Each of the Saars' claims rests on Kingdom Trust's alleged breach of the Custodial Agreement between the Saars and Kingdom Trust. Their first claim, demanding transfer of their accounts to BitGo Trust, relies on Kingdom Trust's breach of the Custodial Agreement. *Id.* ¶ 70. Their claim for damages also rests on Kingdom Trust's alleged breach of the Custodial Agreement. *Id.* ¶¶ 78-79. The Saars also allege that Kingdom Trust breached a covenant of good faith and fair dealing implicit in the Custodial Agreement. *Id.* ¶¶ 84-85. The fourth claim, alleging conversion by a bailee, states that Kingdom Trust had an obligation arising under the Custodial Agreement. *Id.* ¶¶ 89-90. Digital IRA is not a party to custodial agreements that Kingdom Trust enters with its customers or to the Custodial Agreements referred to by the Saars. *See id.* ¶ 22.

Digital IRA's interest in litigation stems from harm to its reputation and customer relationships because of Kingdom Trust's alleged tortious behavior. *See* Complaint, *Digital IRA.com*, No. 4:19-CV-04147-KES, Docket 1 ¶ 60. Digital IRA alleges conversion based on their own possessory interest in acting as ADR for its clients' assets. *Id.* ¶¶ 74-84. Digital IRA also alleges breach of the referral

10

agreement between it and Kingdom Trust. *Id.* ¶¶ 85-90. The harm Digital IRA claims is to its reputation and relationships with clients due to Kingdom Trust's alleged tortious conduct. *Id.* ¶¶ 56-104. And this court found that Digital IRA may only bring claims pertaining to its own reputational damage and that it does not have standing to bring claims on its clients' behalves. Order Granting Preliminary Injunction, *Digital IRA*, No. 4:19-CV-04147-KES, Docket 60 at 7-9.

The court finds that Digital IRA's and the Saars' interests in litigation are not sufficiently alike to yield protection under the common interest privilege. Digital IRA's interest stems from its concern with its own reputation and from its desire to enforce the referral agreement it entered into with Kingdom Trust. The Saars' interest is in using their desired ADR for their retirement accounts and in enforcing the Custodial Agreement they entered into with Kingdom Trust. Digital IRA has an interest in the assets of all customers who requested transfer being moved to BitGo Trust, because that would allow it to avoid the greatest reputational damage. The Saars, conversely, only have an interest in the transfer of their two retirement accounts—they do not have an interest in every customer's IRA account. And Digital IRA does not allege that it has a special interest in the Saars' accounts—only that it has an interest in preventing damage to its reputation from Kingdom Trust's alleged refusal to transfer accounts to BitGo Trust. Thus, the court finds that Digital IRA has not

11

met its burden of showing that the common interest privilege applies under the narrow construction of privilege statutes demanded by the South Dakota Supreme Court. *See Catch the Bear*, 352 N.W.2d at 645, 646-47.

The court does not accept the Saars' argument that the Eighth Circuit's decision in *In re Grand Jury Subpoena Duces Tecum* dictates that this court must loosely apply South Dakota's privilege statute to allow the common interest privilege where there is any "legal, factual, or strategic" similarity between the parties' interests. 112 F.3d 910, 922 (8th Cir. 1997). First, the *Grand Jury Subpoena* court did not interpret South Dakota law, because that case was an appeal of a question arising under federal question jurisdiction from the District of Arkansas. *Id.* Thus, the court was not guided by the *Catch the Bear* imperative that the common interest privilege be "strictly construed to avoid suppressing otherwise competent evidence." *Catch the Bear*, 352 N.W.2d at 646-47. Second, the *In re Grand Jury Subpoena* court found that the common interest privilege did not apply where the parties seeking the interest had the same "interest in ensuring that there was no distortion of [the events being investigated] by political and legal adversaries, and no misunderstanding of them by the public." 112 F.3d at 922. Here, Digital IRA's only interest is in its own reputation. The Saars have not alleged that they have any interest in Digital IRA's reputation, only that they have an interest in choosing a specific ADR for their retirement accounts. Thus, their interests are no more similar than those at issue in the *In re Grand Jury Subpoena* case and the Saars do not meet this lower burden.

12

Finally, the Saars and Digital IRA were on notice that the Saars' counsel represented only the Saars' interests, and not Digtial IRAs, because of the engagement letters from the firms representing the Saars in this action. *See See* Affidavit of Ashley R. Brost, Exhibit A, *DigitalIRA.com*, No. 4:19-CV-04147-KES, Docket 92-1 (engagement letter from Christine M. Adams of Cader Adams LLP); Affidavit of Ashley R. Brost, Exhibit B, *DigitalIRA.com*, No. 4:19-CV-04147-KES, Docket 92-2 (engagement letter from Jason R. Sutton of Boyce Law Firm LLP). Thus, there is no reason the parties would have shared information under the impression that they were jointly pursuing the same legal outcome. Rather, the letters explicitly disclaim that the Saars' attorneys in any way represent Digital IRA's interests in this action. Thus, the court finds the interests of the parties were not "common" and the common interest privilege does not apply here. Because the court finds that the interests of the parties are not "common," it does not need to reach the issue of whether the parties have to be parties to the same lawsuit.

## CONCLUSION

The court finds that the common interest privilege does not protect communications between the Saars and Digital IRA and Bitcoin IRA because the interests of the parties are not "common" within the meaning of the South Dakota statutory common interest privilege. The court already denied the motion to compel as to the parties who have since voluntarily dismissed the action. Docket 31. Thus, it is

ORDERED that Kingdom Trust's motion to compel (Docket 20) is granted as to the Saars.

Dated June 2, 2020.

BY THE COURT:

/s/ *Karen E. Schreier*
KAREN E. SCHREIER
UNITED STATES DISTRICT JUDGE